**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 CV 02542** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **PARTHA GHOSH, CONSTANTINE PETERS** | ) | |
| **LIPING ZHANG, MARGARET THOMPSON** | ) | |
| **TERRY McCANN, ANTHONY RAMOS,** | ) | |
| **MICHAEL RANDLE, and WEXFORD** | ) | |
| **HEALTH SOURCES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Michael Brown filed his first amended complaint against Dr. Partha Ghosh,

Dr. Constantine Peters, Dr. Liping Zhang, Margaret Thompson, Terry McCann, Anthony Ramos,

Michael Randle, and Wexford Health Sources, Inc. ("Wexford Health") (collectively, the

"defendants").[1]  The complaint arises from defendants' alleged deliberate indifference to

Brown's requests for certain medical treatment for prostate cancer while he was incarcerated.

Before the court are defendants' motions to dismiss under Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, Dr. Peters's motion to dismiss [53] is denied; Drs. Ghosh

and Zhang and Wexford Health's motion to dismiss [48] is denied; and Randle, McCann,

Ramos, and Thompson's motion to dismiss [60] is granted in part and denied in part.

---

[1] The court has jurisdiction under 28 U.S.C §§ 1331 and 1343(a)(3). Venue is proper in the Northern
District of Illinois under 28 U.S.C. § 1391(b) because all of the events giving rise to Brown's claims
occurred in this District.

**BACKGROUND**

The following facts are taken from the first amended complaint and are presumed true for

the purpose of resolving the pending motions. Brown was incarcerated at the Stateville

Correctional Center ("Stateville") in Joliet, Illinois, from August 2007 to August 2009. He was

initially processed at the Northern Reception Classification Center and held in "receiving"

(presumably at the Northern Reception Classification Center) from August 2007 to July 23,

2008. Brown was then transferred to the main Stateville facility and he remained there until his

release on August 11, 2009. Brown suffers from advanced prostate cancer and urinary retention,

for which he was being treated prior to his incarceration at Stateville. During Brown's

incarceration, the cancer spread to other parts of Brown's body. Brown asserts that the cancer

would not have spread if he had received radiation treatment that he requested and which was

recommended by Dr. Peters at the beginning of his incarceration.

During the period of Brown's incarceration, Dr. Ghosh was the Medical Director at

Stateville, Drs. Peters and Zhang were doctors at Stateville, and Dr. Peters also served as the

Medical Director at the Northern Reception Classification Center. Ramos, who is currently the

acting warden at Stateville, was acting warden during a portion of Brown's incarceration.

McCann was also a warden during a portion of Brown's incarceration. Thompson served as

Stateville's Grievance Officer. Randle is the director of the Illinois Department of Corrections.

Wexford Health is a Pennsylvania corporation.

I.      **Brown's Requests for Radiation Treatment and Prescription Drugs While in
        Receiving**

When Brown was first processed at the Northern Reception Classification Center, he

gave Dr. Peters a copy of a medical history that showed that he was currently receiving treatment

for high grade prostate cancer and urinary retention.  Brown told Dr. Peters that his urologist had

recommended that he receive external beam radiation treatment, but that as of the date of his

incarceration he had not received the treatment because he had not been able to pay for it.  Dr.

Peters recommended that Brown receive radiation treatment.  Dr. Peters also asked Brown where

he would like to have the treatment done.  Brown requested to stay in receiving  and receive

treatment at the University of Illinois at Chicago ("UIC").

Between September 2007 and July 2008, Brown went to UIC to consult with urologists

and oncologists.  He never received radiation treatment.  Brown asserts that he was denied

radiation treatment for two reasons: first, Wexford Health pressured the defendants to deny

medical treatment due to budget constraints, and second, the defendants believed Brown would

die shortly or be paroled in August 2009.

On July 18, 2008, Brown's medical care providers at UIC told him that the cancer was no

longer in remission and that he had tumors in his lower back and pelvis.  Dr. Peace, a physician

at UIC, gave Brown two prescriptions for medication to strengthen his bones in preparation for

chemotherapy.  When Brown returned to "receiving," the health care personnel at Stateville

denied knowledge of the prescriptions and he did not receive the prescribed medication.  In

August 2008, Brown filed an emergency grievance, which was denied in February 2009.

**II.    Requests to Transfer Brown to Other Correctional Facilities**

While Brown was in receiving, Dr. Peters recommended that Brown be transferred to

Dixon Correctional Center because it specializes in the health needs of prisoners. The Illinois

Department of Corrections denied the transfer.

After Brown had moved to the main facility at Stateville, he requested to be transferred

to the Sheridan Correctional Facility, which is a minimum security facility, in order to facilitate

his medical care. This request was also denied. Brown asserts that the denial of his request to transfer "exacerbated the problem of his denial of reasonable health care" because it was difficult to obtain necessary medical care at Stateville, which is a maximum security facility.

### III.  Brown's Medical Care at Stateville's Main Facility

During Brown's incarceration at the main Stateville facility, Dr. Zhang allegedly refused to provide proper medical treatment to Brown. Dr. Zhang and Thompson had an "ongoing practice of denying prisoners medical care," and as part of this practice they falsely asserted that Brown himself had refused necessary medical treatment for prostate cancer.

Also during this time, Warden Ramos ignored a permit that Brown had obtained from Dr. Ghosh that stated that he could carry a towel to wipe off sweat that is caused by hot flashes that are related to Brown's illness. Ramos physically took Brown's towel away from him, and in pulling the towel away Ramos caused Brown to fall and injure his back because he was using crutches at the time. Brown filed an emergency grievance regarding the towel incident in July 2009. Brown's complaint states that his grievance was resolved "at an institutional level" in August 2009 and that he was advised to submit a grievance report to the Illinois Department of Corrections for further investigation. Brown submitted the grievance to the Department of Corrections in August 2009.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d

4

485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, --- F.3d ----, 2010 WL 3385191, at *1 (7th Cir. Aug. 30, 2010). Rather, it is the facts that count.

## DISCUSSION

### I. Exhaustion of Remedies

As a threshold issue, Drs. Peters, Ghosh, Zhang and Wexford Health argue that Brown's claims should be dismissed for failure to exhaust administrative remedies. Pursuant to the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[S]o long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still 'available' under the PLRA." *Dole* v. *Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion of remedies is an affirmative defense, and it is the defendants' burden to prove that Brown did not seek the administrative remedies that were available to him while he was incarcerated. *See Jones* v. *Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); *Kaba* v. *Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

Brown asserts that he was released from Stateville as of the date when he filed his first amended complaint and that therefore he was not a "prisoner" subject to the exhaustion

requirements of the PLRA. The court determines whether a plaintiff should be considered to

be a "prisoner" under the PLRA by reference to the status of the plaintiff at the time when he

initiated the action. *Witzke* v. *Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("In determining

whether a plaintiff is a 'prisoner confined in jail,' [under the PLRA] we must look to the

status of the plaintiff *at the time he brings his suit*." (emphasis added)); *see also Ahmed* v.

*Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) (a plaintiff cannot cure failure to exhaust

administrative remedies by filing amended complaint after he has been released from prison).

Brown's original complaint was filed on April 27, 2009, while he was still incarcerated at

Stateville. Therefore, before Brown filed suit in this court he was required to follow the

multi-step grievance procedure that has been established by the Illinois Department of

Corrections. *See* Ill. Admin. Code tit. 20, § 504.800 *et seq.*[2]

Based on the information presented, the court is unable to determine whether Brown

exhausted his administrative remedies before commencing the present action. In his first

amended complaint, Brown states that he filed two grievances with the Illinois Department of

Corrections: the first, filed in August 2008, concerns the medical treatment he received under

Dr. Peters's care at the Northern Reception Classification Center; the second, filed in August

2009, concerns the towel incident with Warden Ramos. Brown asserts that his first grievance

was "denied" in February 2009. Significantly, Brown does not assert that he appealed the

---

[2] The grievance procedures include the following steps. First, if a prisoner's grievance cannot be resolved
through the efforts of a counselor, the prisoner may file a written grievance within 60 days of the incident
that gave rise to the grievance. Ill. Admin. Code tit. 20, § 504.810. Second, the written grievance is
reviewed by a Grievance Officer, who submits a recommendation to the Chief Administrative Officer. *Id.*
§ 504.830. The Chief Administrative Officer advises the prisoner of the decision as to the grievance. *Id.*
Third, the Chief Administrative Officer's decision may be appealed to the Director, for possible referral
to the Administrative Review Board for a hearing. *Id.* § 504.850.

Grievance Officer's Report to the Director, as would be required to exhaust the administrative

remedies made available by the Illinois Department of Corrections procedures. *See* 20 Ill.

Admin. Code § 504.850. With respect to Brown's second grievance, the complaint states that

Brown submitted the grievance to the Illinois Department of Corrections after it was

addressed by the officials at Stateville, but that the grievance has "not been resolved."

Brown does not attach the grievances or any documents related to his grievances to

his first amended complaint. However, he did attach the August 2008 grievance to his initial

*pro se* complaint.[3] Brown did not sign the signature line at the bottom of the Grievance

Officer's Report, whereby a prisoner may indicate that he wishes to appeal the Chief

Administrative Officer's decision. The court might properly infer from this that Brown did

not appeal the August 2008 grievance. *See Burrell* v. *Powers*, 431 F.3d 282, 284 (7th Cir.

2005) (where the plaintiff did not indicate that he wished to appeal the grievance officer's

report by signing the appeal notice at the bottom, district court correctly concluded that he

never appealed the grievance). Also included among the exhibits to Brown's *pro se*

complaint, however, is an unsigned, typed document, apparently dated March 18, 2009[4] and

titled "Emergency Administrative Review Board Committed Person Grievance Appeal." This

typed document appears to be responsive to a "Grievance Office Response" that was filed on

March 9, 2009, the same date as the Chief Administrative Officer's concurrence with

Thompson's recommendation to deny Brown's grievance. Without more information, the

---

[3] The court may take judicial notice of these documents without converting the defendants' motion to dismiss to a motion for summary judgment. *Granger* v. *Kayira*, No. 08-cv-39, 2009 WL 3824710, at *2 n.3 (N.D. Ill. Nov. 12, 2009).

[4] The document is of poor quality and the dates are difficult to read.

court cannot rule out the possibility that this document indicates that Brown appealed the decision regarding his August 2008 grievance and thereby exhausted his administrative remedies. Brown did not attach the August 2009 grievance to his original *pro se* complaint.

In their motion to dismiss, Drs. Peters, Ghosh, Zhang and Wexford Health assert that dismissal is warranted "based upon the fact" that Brown's complaint does not state that he appealed the August 2008 grievance or "resolved" the August 2009 grievance. Defendants, however, have submitted no documents in support of their assertion that Brown did not exhaust his administrative remedies. *Compare with Flournoy* v. *Schomig*, 152 Fed. App'x 535, 536 (7th Cir. 2005) (prison officials submitted a motion to dismiss accompanied by the affidavit of a records custodian who testified that the plaintiff had not submitted a grievance). While the court recognizes that Brown's failure to state that he exhausted his administrative remedies might, as defendants argue, indicate that he did not appeal the denial of his grievances, defendants' unsupported assertions are not enough to satisfy their burden on this issue. "Exhaustion is 'an affirmative defense that the defendants have the burden of pleading *and proving*.'" *Brengettcy* v. *Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale* v. *Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)) (emphasis added). This means that the plaintiff "need not plead that he exhausted his administrative remedies." *Pavey* v. *Conley*, 544 F.3d 739, 41 (7th Cir. 2008). The court cannot dismiss Brown's claims, as defendants request, simply because his First Amended Complaint does not make the facts relating to exhaustion clear.

Defendants' motion to dismiss based on failure to exhaust administrative remedies will be denied. Should defendants later show that exhaustion of remedies is contested as a matter of fact, the court will conduct a hearing and allow necessary discovery related to

8

exhaustion. *See Pavey*, 544 F.3d at 742 (describing the procedures to be followed in a case in which exhaustion is contested).

**II.      Brown's Eighth Amendment Claims**

The Eighth Amendment prohibits prison officials from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Zentmyer* v. *Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)).  In order to bring a successful claim under the Eighth Amendment, a prison inmate must show that (1) the deprivation was "objectively serious," and (2) the official acted with "deliberate indifference" to the medical needs of the inmate. *Id.*

An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes* v. *Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).  Defendants do not contest that prostate cancer is an objectively serious medical condition.

The term "deliberate indifference" refers to the official's subjective awareness of the prisoner's medical condition and requires more than a showing of negligence or recklessness. "[A] prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Zentmyer*, 220 F.3d at 811 (quoting *Farmer* v. *Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)).  Where the plaintiff has brought claims against defendants in their individual, as opposed to official, capacities, the plaintiff must show that the defendants were personally

9

involved in the alleged constitutional deprivation. *Palmer* v. *Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

The Seventh Circuit has recently explained that, while the federal rules demand that a complaint "lay out a plausible grievance," plaintiffs alleging a claims of deliberate indifference "need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading." *Burkes* v. *Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Thus, "[a] prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted – if it names the persons responsible for the problem." *Id.* Here, defendants argue that Brown's complaint fails to allege that they acted with deliberate indifference, as required by Federal Rule of Civil Procedure 8(a).

### A.     Claims against Drs. Peters, Zhang, and Ghosh

Under notice pleading, Brown sufficiently alleges that the defendant doctors acted with deliberate indifference. The complaint states that Brown met with Dr. Peters, the Medical Director at the Northern Reception Classification Center, soon after his incarceration, and gave Dr. Peters a copy of a medical history that showed that Brown was being treated for prostate cancer. Brown told Dr. Peters that his urologist had recommended "external beam radiation treatment," and Dr. Peters agreed with this assessment and in turn "recommended radiation treatment for Brown." Brown never received the radiation treatment that Dr. Peters recommended. Thus, according to Brown's complaint, Dr. Peters knew of his serious medical condition, acknowledged to Brown that radiation treatment was the proper treatment, but failed to follow-through with that course of action. Brown further alleges that the doctors at the Northern Reception Classification Center ignored his requests for medication that had been

prescribed to him by his doctors at UIC. Dr. Peters's title and position can lead to an inference that he had some personal responsibility for establishing the medical policies at the Northern Reception Classification Center. *See Duncan* v. *Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (reversing dismissal of a hospital administrator from a section 1983 claim of deliberate indifference because his position "justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct").

Brown further alleges that Dr. Ghosh, the Medical Director at Stateville, gave him a permit to carry a towel and that the "defendants," which include Dr. Ghosh, refused to provide radiation treatment due to pressure from Wexford Health and because they believed that Brown would soon be released or would die. These allegations, while sparse, are sufficient to put Dr. Ghosh on notice regarding the nature of Brown's claims and provide a plausible foundation for the inference that Dr. Ghosh was personally involved in the denial of Brown's medical treatment.

Finally, Brown alleges that Dr. Zhang, a doctor at Stateville's main facility, "continually refused" to provide him with "medical care and treatment reasonably required" by a patient with prostate cancer. Brown also states that Zhang had a practice of denying medical care to prisoners and that he "alleged" that Brown had refused medical care or treatment when, in fact, Brown had never refused medical care or treatment. From these facts the court can infer that Brown requested necessary medical care from Dr. Zhang and that Dr. Zhang ignored Brown's requests or refused to provide the necessary care.

Drs. Peters, Zhang, and Ghosh assert that Brown has not shown "deliberate indifference" on the part of the doctors because he has not alleged that their failure to provide radiation treatment and certain prescription drugs was more than a reasonable difference of opinion as to

11

how he should be treated.  *See Johnson* v. *Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006);

*Gavin* v. *Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a

condition should be treated does not give rise to a constitutional violation.").  At least at the

pleading stage, though, certain denials of treatment can be so gross to warrant an inference of

deliberate indifference.  *Duncan*, 644 F.2d at 654-55 (noting that initial failure to properly

diagnose an injury may be mere error in judgment, but the failure to schedule surgery for twenty-

two months, after the need was recognized, created an inference of deliberate indifference).

Here, the issue of professional judgment is properly reserved for a later stage in the proceedings.

In order to withstand defendants' motion to dismiss, Brown "at this stage of the litigation need

only allege that [defendants were] deliberately indifferent to a substantial risk of serious harm."

*Brown* v. *Budz*, 398 F.3d 904, 909 (7th Cir. 2005).  Drs. Peters, Zhang, and Ghosh's motions to

dismiss will be denied.

B.      **Claims against Randle, Ramos, McCann and Thompson**

Randle, Ramos, McCann and Thompson first assert that Brown is suing them in their

official capacities and that his claims are barred by the Eleventh Amendment.  *See, e.g.*

*Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)

(the Eleventh Amendment bars section 1983 claims for damages against state officers in their

official capacities because the state is the real party in interest). Brown responds that he has

brought suit against the defendants in their individual capacities and asserts that the fact that his

complaint refers to the defendants by their official titles is not dispositive.

While defendants are correct that Brown's complaint does not specify that he is suing the

state officer defendants in their individual, as opposed to official, capacities, there is no "rigid

rule" that "a plaintiff who fails to designate whether a defendant is being sued in her official or

individual capacity shall be presumed to be bringing the action against the defendant in her

official capacity." *Mill* v. *Smith*, 220 F.3d 491, 494 (7th Cir. 2000).  In general, if a plaintiff

seeks injunctive relief because of unconstitutional policies or customs, the defendant has been

sued in his official capacity; if the plaintiff asserts that the defendant has engaged in tortious

conduct under color of state law, the defendant has been sued in his individual capacity.  *Id.*

Brown's complaint seeks money damages and alleges specific conduct by two of the state officer

defendants, Thompson and Ramos.  The facts alleged in Brown's complaint relate to specific

instances wherein Brown was denied radiation treatment.  With the exception of Brown's

allegations regarding Wexford Health, the complaint does not discuss official policies or

customs.  Consistent with these aspects of Brown's complaint, the court concludes that Brown is

suing Randle, Ramos, McCann and Thompson in their individual capacities.[5]

Although the doctors named in this case can be said to have had personal involvement in

the medical treatment at issue here, the same cannot be said about McCann, a former warden, or

Randle, the Director of the Illinois Department of Corrections.  Brown's complaint does not

allege any facts that are specific to McCann or Randle.  Neither defendant would be directly

involved or have knowledge of the day to day operations of dispensing medication or overseeing

medical policies such that they can be held personally to have participated in or had knowledge

of the decisions that led to the alleged deficiencies in Brown's medical treatment.  *See Duncan*,

644 F.2d at 655.  Indeed, as non-medical prison officials, Randle and McCann were entitled to

leave Brown's treatment in the hands of Stateville's medical care professionals.  *See Berry* v.

---

[5] Brown also requests a declaratory judgment appointing a Special Master to investigate the medical care that is afforded to prisoners at Stateville.  As Brown's response to defendants' motion to dismiss makes clear, however, the thrust of his complaint is that he seeks damages from the defendants in their individual capacities.

*Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [a jail administrator] was entitled to defer to the judgment of the jail health professionals so long as he did not ignore [plaintiff]."); *Johnson* v. *Doughty*, 433 F.3d 1001, 1011 n.9 (7th Cir. 2006) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." (quoting *Spruill* v. *Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004))). At most, McCann and Randle could be said to have been involved in the denial of Brown's requests to be transferred to different facilities. Brown has not alleged that these requests were improperly denied, however, and in the absence of any allegation that McCann and Randle knew of Brown's requests for radiation therapy, Brown's claims regarding denial of necessary medical treatment should properly focus on the defendant doctors.

Likewise, Brown fails to allege facts sufficient to establish a claim against Ramos, another warden at Stateville. Although Brown alleges that Ramos "disregarded" his permit for a towel and pulled the towel away from him at one point, causing him to fall and injure his back, these facts do not rise to the level of deliberate indifference as required for a constitutional violation under the Eighth Amendment. In particular, Brown has not alleged that his back injury or his inability to use his towel created an excessive risk to his health or safety. *See Zentmyer*, 220 F.3d at 811 (a prison official must know of and disregard an excessive risk to inmate's health and safety in order to be found liable under the Eighth Amendment). To the contrary, Brown's response to defendants' motion to dismiss states that he has not "pled a claim for cruel and unusual punishment against Defendant Ramos specifically regarding the removal of Plaintiff's towel." Moreover, Ramos's actions cannot plausibly be said to have affected the

14

severity of Brown's cancer.   Nor has Brown alleged that Ramos was personally involved with,

or was even aware of the nature of, the doctors' treatment for his cancer or Brown's requests for

radiation therapy.  Absent such allegations, the cannot plausibly infer from the fact that Ramos

"disregarded" Brown's permit for a towel that he was also involved with the doctor's decision to

deny radiation therapy for Brown's cancer.  *See Greeno* v. *Daley*, 414 F.3d 645, 656 (7th Cir.

2005) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will

generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill*,

372 F.3d at 236))).  Brown's claims against Randle, McCann and Ramos will be dismissed.[6]

Margaret Thompson was the Grievance Officer at Stateville during Brown's

incarceration and therefore she was charged with investigating prisoners' complaints of

inadequate health care.  Brown alleges that Thompson had an "ongoing practice of denying

prisoners medical care" and that she falsely asserted that Brown had refused medical or

treatment as part of this practice.  These facts are sufficient to put Thompson on notice regarding

the claims against her and allows the court to infer that Thompson was personally involved with

the alleged deprivation of necessary medical treatment.  *See Burks*, 555 F.3d at 595 (noting that a

complaint examiner who failed to read each grievance or who prevented the medical unit from

delivering needed care might be liable under Section 1983).  Thompson's motion to dismiss will

be denied.

---

[6] Because the court dismisses Brown's claims against Ramos, it will not consider the argument made by defendants Peters, Zhang, Ghosh, and Wexford Health that the "towel incident" is unrelated to Brown's other claims and that his complaint should therefore be dismissed under *George* v. *Smith*, 507 F.3d 605 (7th Cir. 2007).

### C.  Claims Against Wexford Health

Brown's complaint alleges facts sufficient to state a claim against Wexford Health.  In analyzing a section 1983 claim against a private corporation, the court uses the same principles that would be applied in examining claims against a municipality.  *Rodriguez* v. *Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009).  Therefore an inmate bringing a claim against a corporate entity for a violation of his constitutional rights must show that the corporation supports a "policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners."  *Woodward* v. *Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (quoting *Estate of Novack ex rel.* v. *Cnty of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)).  Because liability is not premised upon the theory of vicarious liability, the corporate policy "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Id.* (quoting *Novack*, 226 F.3d at 530).

Brown alleges that Wexford Health had a policy of denying medical care and treatment to inmates at Stateville as a cost-saving device.  Wexford Health "pressur[ed]" Brown's medical care providers to deny radiation therapy, and, as a result, Brown did not receive necessary treatment for his prostate cancer.  Defendants argue that Brown has failed to adequately describe any allegedly unconstitutional policy of Wexford Health.  The court concludes, however, that these facts provide a sufficient basis to infer that Wexford Health maintained a policy – here, denying medical care due to budget restraints – that infringed upon Brown's Eighth Amendment rights.  *See Rodriguez*, 577 F.3d 816, 821 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, — U.S. at —, 129 S. Ct. at 1949));
*McDonald* v. *Wexford Health Sources*, No. 09 C 4196, 2010 WL 3034529, at *3 (N.D. Ill. Jul.

30, 2010) (denying Wexford Health's motion to dismiss where the plaintiff alleged a similar policy). Moreover, the allegation that Wexford Health pressures medical care providers to deny medical care is specific enough to alert defendants to the policy he alleges infringes on his constitutional right. The court concludes that Brown's allegations regarding Wexford Health are sufficient for the purposes of Federal Rule of Civil Procedure 8(a). Wexford Health's motion to dismiss is denied.

## III.     Brown's Fifth and Fourteenth Amendment Claims

Brown's complaint asserts generally that defendants' actions violated his due process rights under the Fifth and Fourteenth Amendments but does not specify which defendants violated his due process rights, or how. Neither the allegations in Brown's complaint, nor his responses to defendants' motions to dismiss, outline a due process claim against Randle, McCann, or Ramos – the state officials whose motions to dismiss are granted herein. Brown has not alleged that his requests to transfer were intentionally or improperly denied or that the grievance procedures established by the Illinois Department of Corrections were misused by defendants. Moreover, Brown's response to defendants' motion to dismiss states that he has "not assert[ed]" a "claim for the mishandling of his grievances." To the extent that Brown has alleged due process claims for failure to follow Stateville's grievance procedures or for denial of his requests to transfer to another facility, the claims are dismissed.

## CONCLUSION AND ORDER

For the following reasons, Dr. Peters's motion to dismiss [53] is denied; Drs. Ghosh and Zhang and Wexford Health's motion to dismiss [48] is denied; and Randle, McCann, Ramos, and Thompson's motion to dismiss [60] is granted in part and denied in part. Brown's claims

against Randle, McCann, and Ramos are dismissed.  The remaining defendants have fourteen

days to answer the complaint.


Dated: September 28, 2010          Entered: _____

                                                   JOAN HUMPHREY LEFKOW
                                                   United States District Court Judge